Case is In Re Old Summit Manufacturing, LLC. It's an adversary proceeding Schwab versus Penn Summit Tubular, LLC et al. Number 06-3838. I think that measures Harris and Christman, is that correct? Yes. Mr. Harris. May it please the court, my name is David Harris. I represent Penn Summit Tubular, LLC and New Summit Manufacturing, LLC. I wish to reserve five minutes for rebuttal. Five. Thank you. So you buy something on September 4th and you are buying accounts receivable, correct? Correct. You are not buying cash or cash equivalents? Correct. So then the question becomes if an account receivable that existed prior to September 3 has a check, what is that check? That check is another miscellaneous property right as enunciated in the list of included assets in Section 1.1L of the Asset Purchase Agreement at issue. In other words, what was sold here was every conceivable asset right that the selling company had with the listing of certain accepted items. One of the accepted items included cash and cash equivalents. Cash equivalents are terms defined by federal legislation and by the Code of Federal Regulations. Cash is a United States obligation. Cash equivalent which has a longer definition is defined as banker acceptance and a myriad of other types of instruments but does not include an unclear check. But if you were, for example, under the UCC and you had an account receivable turned into a check and the check deposited, how would the UCC, what would they consider that to be? Would they consider it to be an account receivable or would they consider it to be more in line with cash? Well, it would be a conditional payment and a conditional payment is not cash. A conditional payment is not a cash equivalent. Isn't the check, if you were looking at it under Article 9, a proceed of the account receivable? I'm not certain it's defined that way other than as a relation. It's a miscellaneous property. What else would it be if you were looking at it just from a commercial law perspective and normally the first place you might look would be the UCC. If an account receivable turns into a check, isn't that check a proceed of the account receivable? If prior to that time somebody had to pay against the account receivable. It could be interpreted that way, yes. But it's still a conditional payment. It is not cash. The check can bounce. But if it is a, it has to be a proceed. It can't be anything else. And then you take a look at Article 9, 102A9 and it says that cash proceeds includes proceeds that are money, checks, deposit accounts or the like. So why isn't the understanding in the marketplace that when this comes in and deposited, it's considered to be cash? Well, I can't take a paycheck to any bank and immediately write a check on it until I'm certain that it's clear. There was an understanding between the parties that specifically delineated all assets. It excluded cash. What's excluded under your contract are all cash and cash equivalents of sellers, whether on hand in transit or in banks. But it wasn't cash or cash equivalents in transit, nor was it cash or cash equivalents in banks. But the UCC does consider to the extent it's applicable, at least by analogy. It does consider in this case the checks to be cash. As a conditional payment, it does not use the word cash. It doesn't say conditional payment. It says under 9102A9 that it considers the cash proceeds to include, among other things, checks. I would submit that is with respect to extinguishing the obligation. It would be in effect with extinguishing a lien or taking care of a lien. It would be in effect paying off the obligation that's secured by the lien. That's correct, but it still doesn't fall within the definition of cash or cash equivalents as defined by federal law. And to the extent that there's any ambiguity and we think the plain meaning is clear under those statutes, the parties, there's no dispute between the selling and purchasing party here. They both agree that this was an asset that was purchased. Are you telling us that there's a fact issue here? Is there a fact issue with respect to what the parties understood and thought? No, there is no fact issue because the record is clear of what occurred. It is admitted in the amended statement of facts that checks were cleared subsequent to the closing. That the seller then, in the seller's complaint, or excuse me, in the trustee's complaint, that the seller then sent the checks to my clients and that my clients accepted the checks. But of course the seller and the buyer aren't going to complain. It's the creditors who are going to complain. The sellers had the option to review all that had occurred. They had a chance to monitor it because in a bankruptcy proceeding, everything's monitored. Sale is monitored. I don't think that the definition of cash or cash receivables is scrutinized. I think really the selling price is what's scrutinized. And then the creditors realize that the net proceeds are going to be distributed pro rata among creditors as their interests appear. But these checks will not be available for distribution if they are defined as you would define them, right? That's correct. They would not be available for distribution. They are the ones who are losing that asset in the bankruptcy estate. That's correct. They are. And so it doesn't really matter if the buyer and the seller don't complain because they're not the ones who are interested. Well, it was a bargain for exchange between two parties and the two bargaining parties have no dispute about what's occurred. Are these related parties? No, they are not. So this was a totally arm's length transaction. Is it purely a legal question, though, whether these things are cash or cash equivalents? Yes, Your Honor. The contract you have here is sort of a standard one off the shelf. Is that correct? I don't know. I did not prepare it. It may have been drafted. It may have been done. And if there is to be something different understood here, shouldn't it be on you to put in the contract that you have a different understanding from what usually is done by deal counsel? Yes. It wasn't done here, was it? No, but plain meaning specifies cash and cash equivalents which are each defined by federal law. What does it say that cash and cash equivalents are defined by federal law? It doesn't say that in the agreement. Aren't property rights under bankruptcy code roughly defined by state law? Property rights are to the extent preempted by federal law. And our Federal Reserve Act of 1913 and the codes promulgated there under define the word cash and cash equivalents. But you defined it in the contract. We use the words cash and cash equivalent. We don't define. You put in the contract all cash and cash equivalents as defined in Code of Federal Regulations blank blank? I don't see that there. The reference to the Code of Federal Regulations is not in the agreement. In fact, what you have is in transit or in banks. Is it the case, sir, that… Oh, I'm sorry. Is it the case that under Pennsylvania law an obligation is retroactively extinguished by the clearing of the check?  If that's true, if the obligation is retroactively extinguished, doesn't that mean that the check has to be in some sense retroactively considered to be cash? At the same time that the obligation is extinguished? Otherwise, how could the obligation be extinguished? By something other than cash or cash equivalent. To make an extreme example, it could have been done by barter or through many other means. But here are defined terms. Terms defined by federal law. The agreement is unambiguous. Pennsylvania law, you made a reference to Pennsylvania law. This contract applies under Pennsylvania choice of law provision. Pennsylvania Supreme Court has adopted the restatement seconds interpreting contracts in case there is an ambiguity. The course of performance between the parties, the actions speak the loudest. And that's section 228, comment A, restatement second, which is cited in our brief. Okay, so looking at what the parties actually did. The parties negotiated an agreement which set that date of September 4 as a particularly significant and important date for the parties where things that were happening before that date meant one thing, things that happened after that date meant a different thing. Should the attention that the parties paid to stuff coming in the gate before 9-4 tell us anything about whether the parties intended collections occurring before that date to not be part of the transfer? I would think that it's not a stagnant process where everything, where a freeze frame picture can be taken as of a given moment. Things are fluid, things are happening, things are coming in, things are coming out. Accounts receivable for services rendered or goods provided, monies come in after, monies come in before, monies come in the second of the signing of the closing. Nothing happens right on the mark. So according to your interpretation, even though the parties used that September 4 date as a hard mark for who was going to get what, the fact that there's a collection straddle means that the parties intended that that money not be excluded. That's correct. That all hinges on an unsighted federal regulation? Correct, Your Honor, and the actions of the parties. And if there were money in a cash register in the tills, in the bank, in a checking account, that would be an excluded item. This was not, just like receivables and the myriad of many other assets that were sold under the terms of the asset purchase agreement. What happens in the real world? The bankruptcy court approval that was given during the course of the day on September 4, you closed immediately thereafter, is that correct? Correct, Your Honor. Isn't what happens in the real world that sometimes if you want, you'll open the mail before the closing, you'll take the checks out, and you'll deposit. Everybody will know it. In fact, sometimes what will happen is the seller will call up a particularly big account and say, could you make sure you pay us right away? And we pick it up. So it's understood that there is a cutoff. It's all those checks you have in hand that are walked over to the bank. Probably the reason you didn't take the checks in hand on the 4th is because the closing probably occurred after 4 or 5 o'clock. But here they will have the ones that came in on the 3rd. Where is it understood in this document that those checks in hand on the 3rd were somehow not to be counted? They were to be excluded from the sale. Or not excluded from the sale, in your case. Well, several instances. It's just that it is cash. I mean, it was cash, it was excluded. Cash and cash equivalents. Cash and cash equivalents. The checks may not have been honored. Just as in the Romaine case, the PA Supreme Court specified numerous events that could have occurred that would have prevented. If the check wasn't honored, what would go back? It would, in effect, reinstate the account receivable, which would be sold. That's correct, Your Honor. And that's the cost of doing business. It comes in and they stiffed you if you're the seller. That's correct. But cash and cash equivalents can't bounce. But normally they don't. 99% of the time they don't. Not in this country. These didn't bounce either. Correct? That's correct. Why don't we hear from your side. Good morning, Your Honors. May it please the Court. My name is Jason Zack Christman. And I had a little preparation, but I think I'd like to begin by clarifying a few things that Mr. Harris put before the Court. The first thing that he talked about was these parties to this contract. He, I believe, is assuming that you have Old Summit Manufacturing, LLC, as a party, and New Summit Manufacturing now transferred to Penn Summit, Tumulier, as a party. But it's the bankruptcy court that actually oversees the sale. It's the bankruptcy court that approves the contract. Yeah, but the bankruptcy court, all it's doing is approving an agreement.  The interpretation of the agreement is done by the plain language of the agreement. We've cited... I mean, that's all the bankruptcy court is doing under 363. It's approving a sale, and the sale is pursuant to the terms of an agreement, correct? Yes, Your Honor, but it's a sale. The estate is under control of the bankruptcy court, and therefore, to a certain extent, the bankruptcy court is conducting the sale. But the agreement says that you're selling all your accounts receivable and, quote, all other assets, close quote. And you're excluding, however, cash and cash equivalents. The question is, are these checks excluded by virtue of being cash and cash equivalents, or are they, quote, all other assets, close quote? Your Honor, frankly, the agreement is a little bit more complicated than that, and I think therein lies the solution to a lot of the ambiguity that might be seen. Mr. Harris was correct to indicate that it is not ambiguous. It does include all accounts receivable of sellers related to the business. That's one of the assets transferred. However, you can get a better understanding of what was meant to happen to checks received prior to the date of closing when you look at subsection 1K, assets also transferred, where if the closing does not occur on or before September 4th, 2002, any payments made to sellers with respect to accounts receivable of sellers related to the business, other than intercompany transfers, on or after September 24th until the closing. They call the such payments collected receivables on or after September 4th. Okay, so on or after September 4th, if a check comes in, it's transferred. It's a collected receivable after the effective date of the contract. When you give that meaning. And that's typical. Yes. After the 4th, it's part of the sale. Exactly, Your Honor. And it also helps explain what happens if it comes in prior to the 4th, which is it's not part of the sale. Let me ask you a question on that, Mr. Christman, because the thing that your opponent relies very heavily on is the fact that the funds were turned over the course of dealing. The parties who negotiated this acted in a certain way. When the funds came in, they turned them over, and the people who turned them over weren't in some collusive arrangement with the people they turned them over to. And therefore, we should understand that that means the parties understood if the money wasn't in cash, it wasn't cash or a cash equivalent, and it belonged to the buyers. What's your rebuttal to that line of argument? Respectfully, Your Honor, I think that that has a lot more weight outside of the context of an approved sale that's been noticed to creditors. The creditors in the court also have expectations, and that's the whole purpose of going through a bankruptcy sale that gets noticed to creditors. The court has approved certain language, has approved in this contract certain transactions. The contract isn't ambiguous. The course of dealing is therefore irrelevant. When you read the cash receivables, the cash and cash equivalents that are excluded, when you read the two sections, one dealing with the sale of accounts receivable, and then the very illuminating section dealing with the collected receivables after September 4th, the court approved this agreement. It didn't approve a course of dealing between the parties.  And we've been looking, I believe Mr. Harris sends you to various laws, various places where you can find definitions. There's a definition in the federal law. Well, there's definition in many of our state and federal statutes. However, when interpreting a contract, when courts get into interpretation, they generally look at the dictionary and not a law, a definition defined in the law someplace that hasn't been referred to. The question is, does the dictionary here tell you that checks are accounts receivable if paying off an account, or are they cash equivalents? The dictionary quite succinctly indicates that an account receivable is an account that is not supported by a negotiable instrument. Now, while one can look at one law and say that a check is cash and look at another law and say that a check is not cash, a check is very clearly a negotiable instrument. And therefore, there was no accounts receivable according to the definition found in Black's Law Dictionary and cited in the trustee's brief. That's very significant. If you also look up cash in Black's Law Dictionary, you will find that it also can include a negotiable instrument. When you go back to the contract and you want to look for more clues as to get rid of the unambiguity or to get rid of the potential ambiguity, the cash and cash equivalents that are excluded from the transfer are cash and cash equivalents of seller, whether on in hand, in transit, or in banks or other financial institutions. Security entitlements, securities accounts, commodity contracts, commodity accounts provided, however, once again, if the closing does not occur on or before September 4th, 2002, purchasers shall be entitled to the collective receivables. Looking at collective receivables, once again, those are items received September 4th, 2002, or thereafter, and they clearly do not include these checks. These checks do indeed fit within the definition of cash and cash equivalents that is indicated in Section 1.2A of the Asset Purchase Agreement. Not only is that the case in Black's Law Dictionary, but Pennsylvania law, the law that one looks to in deciding a bankruptcy matter under the state law where the bankruptcy court is sitting, state law applies, and according to state law, there's a recent Romaine v. Workers Compensation Appeal Board that decided the status of these checks, and 13 P.A.C.S.A. Section 3310B is also quite clear with regard to note or uncertified check taken for obligation. Unless otherwise agreed and except as provided, if a note or uncertified check is taken for an obligation, the obligation is suspended to the same extent the obligation would be discharged if an amount of money equal to the amount of the instrument were taken, and the following rules apply. In the case of an uncertified check, suspension of the obligation continues until dishonor of the check or until it's paid or certified. Payment or certification of the check results in a discharge of the obligation. So your position is that that Pennsylvania law with respect to the suspension and retroactive discharge of an obligation means what? That the check, even though uncertified, has to be viewed as cash or cash equivalent? That it can be viewed as cash, but within the context of this agreement, that is, there was no accounts receivable as of September 4th, 2002. As of September 3rd, it became an accounts received. It became something in transit on the way to the bank, a cash or cash equivalent. Is the logic of your position then not so much that this is clearly and obviously cash or cash equivalent, but that under the terms of the agreement, it's definitely not an account receivable, and since it's not that, it has to be a cash or cash equivalent. Is that it? I believe that when you look at the agreement, that the date of September 4th, the definition of collected receivables and accounts receivables, it is quite clear that if an account is collected before September 4th, it will not be transferred. And if the account is collected on September 4th or thereafter, it will be transferred. That's your interpretation at the bottom line, but that doesn't answer Judge York's question. Which may not be such a great question, so I'll try it again. You seem to be arguing not so much that it's a straightforward thing for us to view an uncertified check as cash or cash equivalent, but to be arguing instead that in the context of this agreement, if it's not an account receivable, it must be an account collected and therefore excluded. Am I following you right? Your Honor, I think what you're saying is, am I hanging my hat on this is an account receivable or a collected receivable, and therefore, am I still looking at the cash and cash equivalents? And I would quote the Black's Law Dictionary, which defines cash as money or the equivalent, usually ready money, currency and coins, negotiable checks, and balances and bank accounts, which circulates as money. Okay, so no, I believe that once we go to the dictionary to interpret cash and cash equivalents in this contract, as opposed to an unreferenced definition in federal or state law, that we come up with these instruments received on September 3rd, 2002, as indeed cash and cash equivalents. Let me put it to you this way. And I think I understand you're saying, hey, I'm not giving up cash and cash equivalents. I'm not asking you to. But is your primary argument, the one that you're resting on most heavily, that, hey, you judges, this can't be an account receivable because of the definitions in the agreement, and since it's not an account receivable, you can view it and should view it as an account collected as of 9-4. As of 9-3. As of 9-3. Would be the important distinction. Okay. But have I got you right? Yes, Your Honor. Isn't there another step to that also? Okay, fine. It may not, your opponent would say, it may not be an account receivable. What makes a check a cash equivalent? If the agreement isn't clear that it's a cash equivalent, your opponent would argue, it must be something else. It must be in that other category. And that other category is something that goes with the sale to the buyer.  Yes, Your Honor. When we look to define cash, we look to the dictionary. If this is not, I think that it fits clearly within the cash and cash equivalents, especially when one views that particular section which talks about it being in transit or in banks. But also with the definition of cash and cash equivalent, if you go to the dictionary, and I cited some other points in Pennsylvania law, there's a criminal statute that refers to a check as a negotiable instrument, as a cash equivalent, that these received checks and these negotiable instruments do constitute cash within the definition, especially as used in this particular contract. Other questions? No questions. Thank you. Thank you very much, Your Honor. Cheers. Cheers. My clients purchased everything that the selling company had except those specifically excluded items. Counsel for the Apple Lee explained that the cash receivables became something called a cash, or something called a, excuse me, accounts receivable became accounts received. Well, we bought that because it's not cash and it's not cash equivalent. Counsel also spoke about the trustee and the bankruptcy court's role in monitoring the whole scheme of things. And the court asked, well, what's really intended when a creditor might review an asset purchase agreement? I would submit that a creditor would look at the feasibility and the fairness of the price being offered, so that creditor would know that what would be sprinkled among creditors would be fair and not an undercut price. I don't believe that creditor would view the timing of what unpaid goods and services are out there, would view when that may fall as to whether they would approve or disprove this agreement of sale. Should we really view the party's intent and the meaning of this language to reflect a willingness to accept the vagaries of bank clearing times with respect to checks? I mean, as we used Judge Ambrose's phrase, in the real world, do people let their bargain rest on whether or not the bank is going to sit on a check or not? Or do they say, look, if you got the check, you got the money? The answer to your question is yes, because there's no better way to monitor how it should be done. The bottom line is it wasn't cash or cash equivalents. I do not believe a creditor would have viewed where something was coming across unless it was a very big ticket item. But I think that might have been negotiated. Here, we can see there may be some doubt. We believe the plain meaning spells it out. But the actions of this party speak loud. The language is clear. And the Code of Federal Regulations, which we heard in the last argument before this court, is something to look at and has teeth. Moreover, one of the cases cited by the Pennsylvania Supreme Court, cited by the appellee, stated that where course of performance was not at issue, the court implied that had a definition such as one that could be drawn from the Code of Federal Regulations, had that been used, then there might not be a problem in interpreting plain meaning. And that case was the Krizinevensky case, if I said that properly. But in any event, the language is clear. The parties reflected the clear intention. It fits within the normal scheme of a bankruptcy distribution and bankruptcy administration. I'm sorry to ask you one other thing. Your opponent emphasized Section 1.K of this agreement. Correct. And said that really tells you what you need to know because of the way it sets up how these collected or in-collection funds were to be treated. Tell us why he's wrong. The argument lacks logic because those words are words of inclusion such that if something comes in after the closing and there's been a delay, you, the buyers, get it. That's all it's saying. It's adding something more. But by adding something more, saying something comes in, cash comes in, something's collected after the fact, doesn't have a reverse logic to it that would state that these unclear checks are, in fact, something that were not sold. Those are words of inclusion, not words of exclusion. Okay. Thank you very much. Thank you. Thank you to both counsels. I take the matter under advisement. The next case is, you know,